UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DORVIN, et al                                CIVIL ACTION

VERSUS                                       NUMBER:    11-00696

3901 RIDGELAKE DRIVE, LLC, et al             SECTION:   "B"

**ORDER AND REASONS**

Before the Court is Plaintiffs Dorothy Watkins Dorvin, Edwin C. Dorvin, Patricia Barilleau Zerangue, Donald C. Zerangue, Frances Lopinto Dwyer, William J. Dwyer, Anna Cannizzaro Steiner, Robert A. Steiner, Cynthia Anthony Brandner, Michael S. Brandner, Sr., America Gacharna, German Gacharna, and Anthony P. Doughty's (collectively Plaintiffs) Motion for Partial Summary Judgment on the Issue of the New Home Warranty Act (Rec. Doc. No. 8). In response, third-party defendant ConstructionSouth, Inc. (CSI) filed a Memorandum in Opposition to Plaintiffs' Motion for Partial Summary Judgment (Rec. Doc. No. 11). In response to CSI's Memorandum in Opposition, Plaintiffs offered a Reply (Rec. Doc. No. 21), and Defendant 3901 Ridgelake Drive, LLC (3901) filed a Response in Opposition to CSI's Memorandum (Rec. Doc. No. 12). CSI filed its own Motion for Partial Summary Judgment seeking dismissal of claims brought by 3901 against them (Rec. Doc. No. 50).

Various third-party defendants also filed Memoranda in Opposition to Plaintiffs' Motion for Partial Summary Judgment: Architectural Building Components (ABC) (Rec. Doc. No. 27); Commercial Paint Company, Inc. (Commercial Paint) (Rec. Doc. No.

29); Year Round Heating & Air Conditioning Co., Inc. (Year Round) (Rec. Doc. No. 32); Soprema, Inc. (Soprema) (Rec. Doc. No. 34); Crasto Glass and Mirror Company, Inc. (Crasto) (Rec. Doc. No. 36); and, Sharp Electric, Inc. (Sharp) (Rec. Doc. No. 37). In response, Plaintiffs filed a Reply to Third Party Defendants' Memoranda in Opposition (Rec. Doc. No. 49). Accordingly, and for the reasons articulated below,

**IT IS ORDERED** that Plaintiffs' Motion for Partial Summary Judgment on the Issue of the New Home Warranty Act is **GRANTED**.

**IT IS FURTHER ORDERED** that CSI's Motion for Partial Summary Judgment against 3901 is **DENIED**.

## PROCEDURAL HISTORY

Plaintiffs are the purchasers of condominiums in the Pontchartrain Caye Complex, all marketed and sold by 3901. Rec. Doc. No. 1-2 at 2). 3901 was the developer of the project; they "purchased the land on which the project was constructed, obtained financing, and hired a general contractor for construction." (Rec. Doc. No. 8-1 at 2). The units at Pontchartrain Caye were advertised as being "premium quality in construction, with premium-quality materials." *Id.* Beginning in 2004, Plaintiffs entered into "Agreements to Purchase and Sell" (APS) with 3901, which served as a guarantee that Plaintiffs would later purchase and APS would later sell the units. *Id.* In the APS, there was an express warranty provision where 3901 "obligated itself to the

warranty provisions of a builder pursuant to Louisiana's New Home Warranty Act (NHWA) as provided in La. R.S. 9:3141 *et seq.*" *Id.*

3901 selected CSI as the general contractor for the project. *Id.* Construction began on the project in June 2004 and was meant to be completed by August 2005. *Id.* at 2-3. However, work was not completed by the time that Hurricane Katrina made landfall, and the storm only further delayed completion of the Pontchartrain Caye units. *Id.* at 3. Plaintiffs closed on their condominiums in February and March 2007. *Id.*

After moving into the units in 2007, Plaintiffs discovered multiple construction defects resulting from "shoddy . . . defective workmanship." (Rec. Doc. No. 1-2 at 2). Additionally, the "materials used to construct the complex were not of the kind and type promised to them by the defendants and/or their agents." *Id.* After discovering the defects, Plaintiffs allegedly alerted 3901 of the damaged areas. *Id.* Plaintiffs claim that "Defendants promised that these defects and poor construction areas would be addressed." *Id.* However, the repairs were never fully completed and Plaintiffs continued to notice problems with the construction of the units. *Id.* at 3. Additionally, Plaintiffs claim that "defendants failed to build the condominium complex, including individual units, to the original specifications and/or blueprints drawn by the architects that designed the complex." *Id.* at 3.

As part of the action, 3901 hired Joe Caldarera to inspect the

condition of the building. (Rec. Doc. No. 8-1 at 3). His report[1] details "significant and extensive defective conditions" that exist in the building. *Id.* at 4. He estimated that a "significant amount of work" must be completed to remedy the defects. *Id.* Caldarera claims that the costs will be $6,364,504.34; this includes costs incurred already by the Plaintiffs to do any repairs and excludes costs already paid by 3901. *Id.*

Plaintiffs were guaranteed "clear title to their individual condominium units at the time of purchasing the units." (Rec. Doc. No. 1-2 at 3). However, Plaintiffs allege that 3901 did not fully compensate all of the contractors and sub-contractors that worked on the project. *Id.* Because of this, "the uncompensated contractors and sub-contractors placed liens against the Plaintiff[s'] condominium units." *Id.* Plaintiffs therefore do not hold clear title to their units, and the value of these units has been reduced due to the liens. *Id.* Specifically, Plaintiffs claim that all defendants committed "acts of negligence, breach[ed their]. . . contract, and breach[ed] . . . their duty of good faith and fair dealing" in the instant case. *Id.* at 4.

Arbitration proceedings occurred between 3901, CSI, and defendant Gayle O. Jenkins between November 8, 2010, and December

---

[1] Caldarera's original report was 104 pages long. (Rec. Doc. No. 8-1 at 4 n. 5). As a result, Plaintiffs only submitted "portions relevant to [their] Motion for Summary Judgment." (*See* Rec. Doc. No. 8-5). Caldarera supplemented his original report in March 2009. (*See* Rec. Doc. No. 8-6).

17, 2010. (Rec. Doc. No. 11 at 2). The arbitrator found that CSI "substantially performed the construction contract with 3901" and was owed $1,040,550.00 in unpaid fees. (Rec. Doc. No. 11-2 at 2). The arbitrator found that the "reasonable costs to repair the following items of minor defective work for which CSI is responsible" is $77,500.00. *Id.*

The instant suit was filed in the 24th Judicial District for Jefferson Parish, State of Louisiana, on February 15, 2008. *Id.* at 1. Specifically, Plaintiffs filed against 3901, Gayle O. Jenkins, Arlen Jenkins, Gayle O. Jenkins Properties, and Southwinds Express Construction, LLC. (Rec. Doc. No. 49 at 1). Defendants then added CSI; Fidelity and Deposit Company of Maryland; ABC, Clayton Roofing and Construction, Inc.; Soprema; Simms Hardin Company, LLC; Sharp; Gallo Mechanical, Inc.; Commercial Paint; Crasto; Year Round; and Thrasher Waterproofing Corp.. *Id.* at 1-2.

Gayle Jenkins, filed for bankruptcy on January 28, 2011. This case was removed to the Eastern District of Louisiana on March 31, 2011 under 28 U.S.C. § 1334(e)(1).[2] (Rec. Doc. No. 1). The matter

---

[2] This statute provides that "[t]he district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction" over "all the property, wherever located, of the debtor as of the commencement of such case . . . ." 28 U.S.C. 1334(e)(1) (2006). Jenkins argued that this case "involves an action against the debtor for damages to real property pursuant to the New Home Warranty Act" and "[a]s such, these actions directly involve property of the debtor's estate." (Rec. Doc. No. 1 at 2). Therefore, removal of the action from state court to federal court was proper.

was referred to the United States Bankruptcy Court for the Eastern District of Louisiana after Jenkins claimed that a judgment in the instant matter would affect her bankruptcy estate. (Rec. Doc. No. 8-1 at 1). On July 7, 2011, the Eastern District "withdrew the reference of this matter to the Bankruptcy Court" because all parties desired a jury trial. (Rec. Doc. No. 5). The instant suit was reallotted to these chambers on January 18, 2012.

## LAW AND ANALYSIS

### A. Standard of Review

#### 1. Summary Judgment

Federal Rule of Civil Procedure 56 permits a court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making this determination, a district court must consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" are presented. *Id.* 56(c). A party requesting summary judgment "must establish that there are no genuine issues of material fact." *Provident Life & Acc. Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). In the Fifth Circuit, an issue is material if its resolution has the potential to affect the outcome of the action. *See, e.g., Roberts v. Cardinal Services, Inc.*, 266 F.3d 368, 373 (5th Cir. 2001). Summary judgment cannot be granted if the evidence available would permit a reasonable jury to

return a verdict for the non-moving party. *See, e.g.*, *Hunt v. Rapides Healthcare System, LLC,* 277 F.3d 757, 762 (5th Cir. 2001).

If the moving party can demonstrate that there is no genuine issue of material fact, the "burden shifts to the nonmoving party to show that summary judgment is not appropriate." *Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991). For a non-moving party to prevail on a motion of summary judgment, it must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' [and] designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)(quoting Fed. R. Civ. P. 56). For the purposes of a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

In the Fifth Circuit, "unsworn expert reports . . . do not qualify as affidavits or otherwise admissible evidence for [the] purpose of Rule 56, and may be disregarded by the court when ruling on a motion for summary judgment." *Provident Life*, 274 F.3d at 1000 (quoting 11 JAMES WM. MOORE ET AL, MOORE'S FEDERAL PRACTICE ¶ 56.14(2)(c) (3d ed. 1997)); *see also Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 191 (5th Cir. 1991)(expert letter not considered for summary judgment purposes where it is unsworn and fails to indicate expert's qualifications); *Nissho-Iwai American Corp. v. Kline*, 845

F.2d 1300, 1306 (5th Cir. 1988)("It is a settled rule in this circuit that an unsworn affidavit is incompetent to raise a fact issue precluding summary judgment.").

### 2. Third-Party Standing to Oppose Motions

The Federal Rules of Civil Procedure state that a "party seeking to recover upon a claim, counterclaim or cross-claim" or "a party against whom a claim, counterclaim or cross-claim is asserted" may seek or oppose a motion for summary judgment. Fed. R. Civ. P. 56(a)-(b). In interpreting Rule 56, the Eastern District of Louisiana has held that "co-defendants do not have standing to oppose a defendant's motion for summary judgment when the motion is unopposed by the plaintiff." *Thurman v. Wood Group Prod. Services, Inc.*, CIV A. 09-4142, 2010 WL 5207587, at *1 (E.D. La. Dec. 14, 2010); *see also* C.F. Bean Corp. v. Clayton Indus., Ltd., CIV A. 95-0161, 1996 WL 470644 (E.D. La. Aug. 19, 1996). Similarly, other district courts have found that co-defendants lack standing to oppose a motion for summary judgment filed by the named defendant when "none of the defendants . . . have filed claims against each other." *Fraioli v. Lemcke*, 328 F.Supp.2d 250, 263 n.4 (D. R.I. 2005); *see also Hawes v. Blast-Tek, Inc.*, CIV 09-365 RHK/AJB, 2010 WL 2680778 (D. Minn. July 2, 2010); *Eckert v. City of Sacramento*, No. 2:07-cv-00825-GEB-GGH, 2009 WL 3211278 (E.D. Cal. Sept. 30, 2009).

### 3. Louisiana New Home Warranty Act

The Louisiana state legislature expressed a

> need to promote commerce in Louisiana by providing clear, concise, and mandatory warranties for the purchasers and occupants of new homes in Louisiana and by providing for the use of homeowners' insurance as additional protection for the public against defects in the construction of new homes. This need can be met by providing a warranty for a new home purchaser defining the responsibility of the builder to that purchaser and subsequent purchasers during the warranty periods provided herein. The warranty, which is mandatory in most cases, shall apply whether or not building code regulations are in effect in the location of the structure, thereby promoting uniformity of defined building standards. Additionally, all provisions of this Chapter shall apply to any defect although there is no building standard directly regulating the defective workmanship or materials.

La. Rev. Stat. § 9:3141 (2011). The warranties provided in the Louisiana New Home Warranty Act (NHWA) are "mandatory and cannot be waived by the owner or reduced by the builder." *Allemand v. Discovery Homes, Inc.*, 2009-1565 (La. App. 1 Cir. 5/28/10); 38 So.2d 1183, 1187. Subject to the NHWA, each builder warrants certain guarantees to homeowners:

> (1) One year following the warranty commencement date, the home will be free from any defect due to noncompliance with the building standards
> (2) Two years following the warranty commencement date, the plumbing, electrical, heating, cooling, and ventilating systems exclusive of any appliance, fixture, and equipment will be free from any defect due to noncompliance with the building standards.
> (3) Ten years following the warranty commencement date, the home will be free from

>major structural defects due to noncompliance with the building standards.

*Barnett v. Watkins*, 2006-2442 (La. App. 1 Cir. 9/19/07); 970 So.2d 1028, 1034-35, *writ denied*, 20007-2066 (La. 12/14/07); 970 So.2d 537 (citing LA. REV. STAT. § 9:3144(A)(2011)). If the NWHA warranties are breached by a builder, any owner has the right to recover "any non-excluded 'actual damages, including attorney fees and court costs.'" *Id.* at 1035 (quoting LA. REV. STAT. § 9:3149(A) (2011)). However, any "'damages with respect to all defects in the home shall not exceed the original purchase price of the home.'" *Id.* (quoting LA. REV. STAT. § 9:3149(A)).

This Court is able to enforce Louisiana state law under the *Erie* Doctrine. In *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), the Supreme Court held that "[e]xcept in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state." *Id.* at 78. Since there is no federal warranty for home owners, the NHWA can be applied in the instant case.

**4. Res Judicata Effect of Arbitration Proceedings**

The Fifth Circuit has held that, in order for a claim to be barred by *res judicata*, three requirements must be met:

>(1) the parties must be the same or in privity with each other, (2) the transactions litigated and decided in the first action must be the same as those in the second action, and (3) the first action must conclude in a final judgment on the merits by an authority of

competent jurisdiction.

*Russell v. Sunamerica Sec., Inc.*, 962 F.2d 1169, 1173 (5th Cir. 1992). Similarly, in Louisiana, for *res judicata* to preclude a second action, there are multiple requirements:

> (1) the judgment is valid; the judgment is final; (3) the parties are the same; (4) the cause or causes of action asserted in the second suit existed at the time of final judgment in the first litigation; and (5) the cause or causes of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation.

*Burguieres v. Pollingue*, 2002-1385 (La. 2/25/03); 843 So.2d 1049, 1053.

The Supreme Court has declined to bar "the offensive use of collateral estoppel from arbitration in subsequent federal court litigation." *Universal Am. Barge Corp. v. J-Chem, Inc.*, 946 F.2d 1131, 1136 (5th Cir. 1991); *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985). In a case that does not involve federal statutory or constitutional rights, "courts should use a case-by-case approach to determining the collateral estoppel effects of arbital findings." *Universal Am. Barge Corp.*, 946 F.2d at 1136-37; *see also Greenblatt v. Drexel Burnham Lambert, Inc.*, 763 F.2d 1352, 1361 (11th Cir. 1985). The Fifth Circuit held that a district court "may preclude relitigation of issues previously determined in an arbitration if the court finds, under the facts of that case, that the arbital procedures afforded due process, that the requirements

of offensive collateral estoppel are met, and that the case raises no federal interests warranting special protection." *Universal Am. Barge Corp.*, 946 F.2d at 1142.

**B. The Third Party Defendants Do Not Have Standing to Oppose Plaintiffs' Motion for Partial Summary Judgment**

Plaintiffs assert that the third-party defendants are not parties to the instant Motion for Partial Summary judgment for multiple reasons. (Rec. Doc. No. 21 at 2; Rec. Doc. No. 49 at 2). First, the "moving party has not filed any claims against the third-party defendants nor have the third party defendants filed any claims against plaintiffs." (Rec. Doc. No. 49 at 2). Second, since the "third-party defendants were not named as parties" to the Plaintiffs' Motion, "any judgment granted as a result . . . will be rendered against 3901 only." *Id.*

This Court has held that co-defendants lack standing to oppose a defendant's motion for summary judgment if the motion is unopposed by the Plaintiff. *Thurman*, 2010 WL 5207587, at *1. The instant case in analogous to *Thurman*. In that case, this Court based its finding on the fact that an adverse party had not raised an objection to the motion for summary judgment. *Id.* Here, Plaintiffs' named adverse party - 3901 - has not raised an objection to Plaintiffs' Motion for Partial Summary Judgment. (*See* Rec. Doc. No. 12 at 1). Instead, various third-party defendants that were added to the litigation by 3901 raised objections to Plaintiffs' Motion. Since the third-party defendants are not

12

adverse parties to Plaintiffs, they have no standing to challenge Plaintiffs' Motion for Partial Summary Judgment, which 3901 did not oppose.

**C. Partial Summary Judgment on the Issue of Liability is Appropriate against 3901**

3901 concedes that it "cannot deny the essential and material allegations of the plaintiff's demand, because 3901 has judicially confessed[3] [to] the [construction] defects in state court as a matter of law and is also barred by judicial estoppel, from denying those allegations." (Rec. Doc. No. 12 at 2). Given that there is no opposition to Plaintiffs' Motion by the named party in the lawsuit and that the third-party defendants do not have standing to challenge Plaintiffs' Motion, summary judgment on the issue of liability should be granted.

**D. The Arbitration Decision Does Not Have Preclusive Effect on 3901's Claims Against CSI in the Instant Suit**

CSI argues that *res judicata* precludes a finding for liability against them by 3901 because of the arbitration proceeding that occurred in late 2010. For the outcome of the arbitration proceeding to have preclusive effect in the instant case, this Court must determine whether the procedure had appropriate due process, that the general requirements of *res judicata* are met, and

---

[3] In Louisiana, "a judicial confession is a declaration made by a party in a judicial proceeding. That confession constitutes full proof against the party who made it." La. Civ. Code Art. 1853 (2011). It is "indivisible" and "may be revoked only on the ground of error of fact." *Id.*

13

that there is no federal interest raised that warrants special protection. *Universal Am. Barge Corp.*, 946 F.2d at 1142. In the Fifth Circuit, that means that the parties must be the same (or in privity with one another), that the transactions in the first and second action are the same, and that there was a final judgment on the merits in the first action. *See, e.g.*, *Russell*, 962 F.2d at 1173.

In the instant case, there is no allegation of improper due process during the arbitration proceedings; therefore, the first of the *Universal American Barge* factors is fulfilled. 946 F.2d at 1142. Similarly, there are no "federal interests warranting special protection" alleged by any of the parties. *Id*. However, CSI has difficulty fulfilling the second of the *Universal American Barge* requirements in the instant case: that the general requirements of *res judicata* are met. *Id.*

CSI cannot establish that *res judicata* is applicable under the Fifth Circuit standard outlined in *Russell*. 962 F.2d at 1173. First, the parties in the first action and the second action must be the same or in privity[4] with one another. In the instant case,

---

[4] Black's Law Dictionary defines privity as:
[t]he relationship between the parties to a contract, allowing them to sue each other but preventing a third party from doing so. The requirement of privity has been relaxed under modern laws and doctrines of implied warranty and strict liability, which allow a third-party beneficiary or other foreseeable user to sue the seller of a defective product.

the arbitration proceeding was between CSI, 3901, and former defendant Gayle O. Jenkins (Rec. Doc. No. 11-2 at 1). The lawsuit is between Dorvin and the other named Plaintiffs against 3901; CSI was not an original party to the case. There is no privity between CSI and Dorvin because there is no contract between Dorvin and CSI; CSI was merely hired by 3901 to work on the Pontchartrain Caye Complex. Second, the transactions in the first action and the second action must be the same. The subject matter of the arbitration was CSI "seeking recovery of damages under contract and tort theories . . . for the construction of [the] condominiums," and 3901 "seeking recovery of damages from CSI for alleged defective work, unperformed punch list work, warranty documents and liquidated damages." (Rec. Doc. No. 11-2 at 1). Conversely, the lawsuit was brought by the Plaintiffs against 3901 for construction defects, breach of warranty, breach of contract, and misrepresentation. (Rec. Doc. No. 1-2 at 3, Count VIII). Given that the arbitration arises out of a contract dispute between the *contractor* and the *subcontractor*, and the instant suit arises out of a contract dispute between the *contractor* and the *purchasers of property*, the causes of action are different in the two actions. Third, there must be a final judgment on the merits in the first action. This requirement is fulfilled, since the arbitrator issued a Final Award on January 14, 2011. (Rec. Doc. No. 11-2 at 3). Since

---

BLACK'S LAW DICTIONARY (9th ed. 2009).

the two proceedings are materially different and involve different parties, the arbitration award cannot be granted preclusive effect.

### CONCLUSION

Given that the named Defendant, 3901, does not oppose Plaintiffs' Motion for Partial Summary Judgment, and that the third-party defendants lack the standing to do so, and alternatively, their objections lack merit, **IT IS ORDERED** that Plaintiffs' Motion for Partial Summary Judgment on the Issue of the New Home Warranty Act (Rec. Doc. No. 8) is **GRANTED**.

Given that the arbitration award has no preclusive effect on the instant litigation, **IT IS FURTHER ORDERED** that CSI's Motion for Partial Summary Judgment against 3901 (Rec. Doc. No. 50) is **DENIED without prejudice to reurge after completion of all discovery.**

New Orleans, Louisiana, this 27th day of March, 2012.

_____
UNITED STATES DISTRICT JUDGE